IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DR. KARL VON BATTEN,
Plaintiff,

v. Civil Action No. __________

SAHARA REPORTERS MEDIA GROUP, INC.,
a New York corporation doing business as
Sahara Reporters,

and

ADEMOLA WASIU OLALEKAN BELLO,
individually,

Defendants.

Case: 1:26-cv-03209
Assigned To : Cooper, Christopher R.
Assign. Date : 9/15/2026
Description: Pro Se Gen. Civ. (F-DECK)

**COMPLAINT FOR DEFAMATION (LIBEL PER SE)**
**AND DEFAMATION BY IMPLICATION**

Plaintiff Dr. Karl Von Batten ("Plaintiff"), proceeding pro se, brings this action against Defendants Sahara Reporters Media Group, Inc. ("SaharaReporters") and Ademola Wasiu Olalekan Bello ("Bello") (collectively, "Defendants"), and alleges as follows:

I. INTRODUCTION

1. This action arises from false and defamatory statements published by SaharaReporters on September 14, 2026, in an article authored by Defendant Bello entitled "'The Talented' Mr. Karl Marx Von Batten: US Lobbyist Allegedly Paid $1.2 Million By Atiku Abubakar, Using Multiple Aliases And Fabricated Academic Credentials" (the "Article").

2. The Article does more than criticize Plaintiff's political advocacy or express unfavorable opinions. It makes specific and verifiable factual accusations concerning Plaintiff's identity, educational history, academic credentials, professional affiliations, connection to the September 11, 2001, terrorist attacks and the World Trade Center, presidential appointment, and professional background.

3. Among other things, Defendants accuse Plaintiff of fabricating academic credentials, lying about attending educational institutions, falsely representing academic affiliations, falsely claiming that a Doctor of Health Administration ("DHA") was awarded by Columbia University, misrepresenting his FRSPH credential, lying about his connection to



RECEIVED
SEP 15 2026
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

September 11 and the World Trade Center, falsely claiming a presidential appointment, using a "fake name," and deceptively maintaining multiple identities.

4. The material factual accusations challenged in this Complaint are false. Plaintiff possesses primary documentary evidence directly refuting them, including diplomas, academic records and written confirmations from educational institutions, Royal Society for Public Health membership records, presidential appointment documentation, contemporaneous records establishing his professional connection to the World Trade Center in 2001, securities-industry registration records, business records, and other documentary evidence.

5. Certain supporting records contain private education, employment, financial, professional, or identifying information. Plaintiff therefore does not attach those sensitive records to this publicly filed Complaint. At the appropriate procedural stage, Plaintiff intends to seek leave, where necessary, to submit appropriate sensitive supporting evidence under seal, subject to an appropriate protective order, and/or for in camera review by the Court.

6. Defendant Bello did not present the challenged accusations merely as rumors or unidentified criticism. Bello expressly represented that material accusations resulted from his "own investigation" and relied upon that purported investigation to lend factual credibility to his conclusions.

7. Plaintiff does not allege merely that Bello conducted an inadequate investigation, misunderstood ambiguous records, or made innocent journalistic errors. Plaintiff alleges that Bello knew the central factual accusations challenged herein were false and nevertheless intentionally published them.

8. Plaintiff alleges that the Article was an intentional effort to discredit him while he was engaged in Washington-based advocacy concerning the public release of FBI and DEA records relating to allegations of drug trafficking involving Nigerian President Bola Tinubu.

9. Plaintiff's professional work requires credibility with members of Congress, Executive Branch officials, federal agencies, clients, journalists, policymakers, and others within the Washington governmental and foreign-policy community. The Article attacks that credibility at its foundation by portraying Plaintiff as a person who fabricated his identity, education, professional credentials, personal history, and government appointment.

10. SaharaReporters subsequently amplified and distributed the Article through its official account on X, expanding the publication and potential audience for the challenged accusations.

11. Plaintiff alleges that Defendants published the challenged factual accusations knowing they were false or while subjectively entertaining serious doubts regarding their truth and therefore acted with actual malice to the extent that constitutional standard applies.

12. Plaintiff seeks compensatory and punitive damages and presently demands total damages of $26,000,000, subject to proof and applicable law.

## II. PARTIES

13. Plaintiff Dr. Karl Von Batten is domiciled in the District of Columbia and conducts substantial professional activities in Washington, D.C.

14. Plaintiff's professional activities include lobbying, government relations, public advocacy, consulting, and work involving members of Congress, congressional staff, Executive Branch officials, federal departments and agencies, journalists, clients, policymakers, and other professional contacts.

15. Defendant Sahara Reporters Media Group, Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with its principal place of business in New York and conducts its publishing activities under the name Sahara Reporters.

16. SaharaReporters owns, operates, publishes, and/or controls the online publication through which the Article was published and subsequently promoted and distributed the Article through its official social-media channels.

17. Defendant Ademola Wasiu Olalekan Bello is, upon information and belief, domiciled in New York and authored the Article giving rise to this action.

## III. SUBJECT-MATTER JURISDICTION

18. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

19. Plaintiff is a citizen of the District of Columbia. Upon information and belief, Defendant Bello is a citizen of New York, and Defendant Sahara Reporters Media Group, Inc. is incorporated in New York and maintains its principal place of business in New York.

20. Complete diversity exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff presently demands total damages of $26,000,000.

## IV. PERSONAL JURISDICTION AND DISTRICT OF COLUMBIA CONTACTS

21. Plaintiff alleges that specific personal jurisdiction exists because the challenged publication concerns and was intended to affect Plaintiff's Washington-centered lobbying, government-relations, and advocacy activities and caused particularized professional and reputational injury within the District of Columbia.

22. At the time of publication, Plaintiff was publicly engaged in advocacy directed toward Congress, Executive Branch officials, federal agencies, journalists, policymakers, and

others concerning the public release of FBI and DEA records relating to allegations of drug trafficking involving Nigerian President Bola Tinubu.

23. Defendants knew that Plaintiff's relevant professional activities were substantially centered in Washington, D.C., and that accusations attacking his honesty, identity, qualifications, educational history, professional credentials, and governmental credibility would particularly affect his professional relationships and effectiveness within the Washington governmental and foreign-policy community.

24. Plaintiff alleges that the timing, subject matter, content, and dissemination of the Article support the inference that discrediting Plaintiff in connection with those Washington-based activities was a substantial intended purpose and effect of the publication.

25. SaharaReporters' contacts with Washington have historically extended beyond the passive availability of its website. Publicly available materials reflect SaharaReporters reporting and newsgathering concerning the Nigerian Embassy in Washington, United States-Nigeria governmental relations, federal departments and agencies, and other Washington-centered Nigerian affairs.

26. Publicly available materials further reflect that SaharaReporters' founder and persons associated with the publication have participated in media, public-policy, press, and newsgathering activities in Washington concerning Nigeria and United States-Nigeria relations.

27. SaharaReporters has historically attributed reporting concerning United States governmental matters, including matters involving the Department of Justice and FBI, to United States officials and "US sources." Plaintiff alleges that this history demonstrates Defendants' familiarity with the United States governmental and Washington foreign-policy audience relevant to the subject matter of the Article.

28. Plaintiff does not rely upon these historical contacts alone. The Article itself concerns Plaintiff's Washington-centered advocacy and governmental activities, and SaharaReporters affirmatively amplified and distributed the Article through its official X account.

29. Plaintiff alleges that the publication and subsequent social-media dissemination caused particularized injury to his credibility, professional relationships, business goodwill, and professional activities within Washington, D.C.

30. Plaintiff intends to seek jurisdictional discovery concerning whether Defendants communicated about Plaintiff with persons in the District, solicited information from District-based sources, transmitted or promoted the Article to District-based recipients, or otherwise purposefully directed publication-related activities toward Washington.

31. Such discovery may include relevant communications with members or staff of Congress, Executive Branch personnel, federal agencies, Washington-based journalists, lobbying and government-relations professionals, clients, policymakers, and other persons within Plaintiff's Washington professional community.

32. Plaintiff will also seek, to the extent relevant and discoverable, communications concerning Plaintiff between Defendants and persons connected to the Government of Nigeria or the Nigerian Presidency, as well as records concerning the distribution, promotion, and geographic reach of the Article.

33. Plaintiff does not presently allege that SaharaReporters maintains a permanent Washington office or that Defendants communicated with any particular federal or Nigerian government official concerning Plaintiff unless and until evidence establishes such facts.

34. Plaintiff alleges that Defendants caused tortious injury within the District through conduct purposefully directed toward Plaintiff's Washington-centered professional activities and relationships.

35. Plaintiff reserves the right to amend these jurisdictional allegations as permitted by the Federal Rules of Civil Procedure following jurisdictional discovery.

V. VENUE AND ALTERNATIVE TRANSFER

36. Plaintiff alleges that venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the controversy has a substantial connection to the District of Columbia, including the Washington-centered professional activities and governmental relationships allegedly targeted by the publication and the particularized professional and reputational injury Plaintiff alleges occurred within the District.

37. Plaintiff acknowledges that Defendants are alleged to reside in New York and may challenge personal jurisdiction or venue. Plaintiff nevertheless alleges in good faith that the District of Columbia is an appropriate forum because Plaintiff's professional activities allegedly targeted and impaired by Defendants are substantially centered in Washington, D.C.

38. If the Court determines that personal jurisdiction over one or both Defendants is lacking, or that venue is improper in this District, Plaintiff respectfully requests, in the alternative to dismissal, that the Court transfer this action to an appropriate United States District Court in the State of New York pursuant to 28 U.S.C. §§ 1406(a) and/or 1631, if the Court determines that such transfer is authorized and in the interest of justice.

39. Plaintiff requests transfer rather than dismissal in that circumstance so that the merits of his claims may be adjudicated in a court possessing jurisdiction over Defendants without requiring unnecessary duplication of proceedings.

## VI. FACTUAL ALLEGATIONS

### A. THE ARTICLE

40. On September 14, 2026, SaharaReporters published the Article authored by Defendant Bello and subsequently promoted and distributed it through SaharaReporters' official account on X.

41. The Article specifically concerns Plaintiff and attacks his honesty and professional credibility through factual accusations concerning his education, academic credentials and affiliations, identity and names, connection to September 11 and the World Trade Center, presidential appointment, professional background, and government service.

42. Plaintiff alleges that the material factual accusations challenged below are false and that he possesses primary documentary evidence directly refuting them.

43. Plaintiff does not attach sensitive educational, employment, professional, financial, or identifying records to this publicly filed Complaint. At the appropriate procedural stage, Plaintiff intends to seek leave, where necessary, to submit appropriate sensitive supporting records under seal, subject to an appropriate protective order, and/or for in camera review by the Court.

### B. FALSE ACCUSATIONS CONCERNING PLAINTIFF'S EDUCATION

44. The Article accuses Plaintiff of lying about attending Columbia University, Harvard University, the University of Oxford, Cornell University, the University of Edinburgh, and New York Institute of Technology, and broadly portrays Plaintiff's educational history as fabricated.

45. Plaintiff alleges that these accusations are false.

46. Plaintiff attended each of the educational institutions that Defendants specifically accused him of lying about attending.

47. Plaintiff possesses primary institutional documentation establishing his attendance and relevant educational credentials, including degrees, academic records, certificates, institutional correspondence, and other records from the respective institutions.

48. Plaintiff alleges that these records directly contradict Defendants' categorical portrayal of his educational history as fabricated.

49. The truth or falsity of Defendants' accusations is objectively verifiable through the records of the educational institutions themselves and other primary documentary evidence.

50. Plaintiff alleges that falsely accusing a professional engaged in lobbying, government relations, advocacy, and consulting of fabricating his educational history directly attacks his qualifications, honesty, credibility, and fitness to conduct his profession.

C. FALSE ACCUSATIONS CONCERNING COLUMBIA UNIVERSITY, DHA, AND ACADEMIC AFFILIATIONS

51. The Article falsely accuses Plaintiff of fabricating his Columbia University educational history and further attributes to Plaintiff representations that he received a Doctor of Health Administration ("DHA") from Columbia University and represented himself as a faculty member of the Columbia University Mathematics Department.

52. Plaintiff alleges that these material factual accusations are false.

53. Plaintiff was awarded a Master of Arts degree by Columbia University and possesses his Columbia University degree and other primary institutional documentation establishing that credential.

54. Plaintiff has never represented that Columbia University awarded him a Doctor of Health Administration.

55. Plaintiff's DHA was awarded by A.T. Still University of Health Sciences, and Plaintiff possesses primary institutional documentation establishing that credential.

56. Defendant Bello specifically relied upon Plaintiff's ResearchGate profile in publishing accusations concerning Plaintiff's academic credentials and affiliations.

57. Plaintiff's ResearchGate profile displays Plaintiff's post-nominal credentials, including "DHA, FRSPH," alongside an institutional listing for Columbia University. Plaintiff alleges that the profile does not state that Columbia University awarded Plaintiff his DHA.

58. Plaintiff alleges that Bello transformed the display of Plaintiff's credentials alongside an institutional affiliation into the materially different factual assertion that Plaintiff claimed Columbia University awarded him a DHA.

59. Plaintiff has never represented himself as a faculty member of the Columbia University Mathematics Department.

60. Plaintiff alleges that Defendants attributed representations to Plaintiff that Plaintiff never made and then accused Plaintiff of dishonesty based upon those purported representations.

61. Plaintiff will seek discovery identifying the precise statement, document, webpage, record, or other material upon which Defendants relied in asserting that Plaintiff claimed a Columbia-awarded DHA or represented himself as Columbia Mathematics faculty.

D. FALSE ACCUSATIONS CONCERNING PLAINTIFF'S FRSPH CREDENTIAL

62. The Article further attacks the legitimacy of Plaintiff's use of the professional credential "FRSPH."

63. Plaintiff alleges that the material factual accusation that his FRSPH credential is fabricated or illegitimate is false.

64. Plaintiff became a member of the Royal Society for Public Health in 2017 and subsequently held membership at the Fellow grade.

65. Plaintiff possesses records issued by the Royal Society for Public Health documenting his membership and specifically identifying his membership as "Fellow grade," supporting his use of the post-nominal credential "FRSPH" during the period in which he held that status.

66. Plaintiff alleges that these records directly refute any material factual accusation that his use of the FRSPH credential was fabricated or illegitimate.

67. Plaintiff intends to present appropriate Royal Society for Public Health documentation to the Court at the proper procedural stage, subject to appropriate protection of private account, financial, and identifying information.

E. FALSE ACCUSATIONS CONCERNING SEPTEMBER 11 AND THE WORLD TRADE CENTER

68. The Article calls Plaintiff a "9/11 survivor" and accuses Plaintiff of lying about his professional connection to the World Trade Center at the time of the September 11, 2001, terrorist attacks.

69. Plaintiff has never claimed that he was physically inside the World Trade Center when the planes struck on September 11, 2001.

70. In 2001, Plaintiff worked for an investment company at the World Trade Center. Plaintiff's office was located on the 39th floor of One World Trade Center, and Plaintiff was returning to the World Trade Center when the terrorist attacks occurred.

71. Plaintiff possesses contemporaneous documentary evidence establishing his employment and professional connection to the World Trade Center in 2001, including securities-industry registration records, business cards, and other contemporaneous materials.

72. Plaintiff alleges that Defendants transformed Plaintiff's truthful account of his professional connection to the World Trade Center and his experience on September 11 into a materially different claim, that Plaintiff represented himself as physically present inside the World Trade Center during the attacks, and then accused Plaintiff of lying about a representation he never made.

73. Plaintiff alleges that this false attribution and accusation directly attack his honesty, integrity, character, and professional credibility.

F. FALSE ACCUSATIONS CONCERNING PRESIDENTIAL APPOINTMENT

74. The Article accuses Plaintiff, expressly or by implication, of falsely claiming that he received a presidential appointment to the Presidential Scholars Commission.

75. Plaintiff alleges that this accusation is false.

76. On January 15, 2026, Plaintiff received a call from the White House informing him that President Trump intended to appoint him to serve as a Commissioner on a presidential commission, namely, the Presidential Scholars Commission, which is administered by the U.S. Department of Education.

77. On August 31, 2026, Plaintiff received official written notification of his appointment to serve as a member, or Commissioner, of the Presidential Scholars Commission.

78. The official appointment letter was issued by the Secretary of Education and informed Plaintiff that Commission staff from the United States Department of Education would contact him to schedule an onboarding and orientation briefing.

79. Plaintiff possesses the original written appointment documentation confirming the appointment challenged by Defendants.

80. Plaintiff alleges that this primary government documentation directly contradicts Defendants' accusation that the appointment was fabricated.

81. Plaintiff alleges that falsely accusing him of fabricating a presidential appointment directly attacks his credibility within the governmental and political community in which he conducts substantial professional activities.

G. FALSE ACCUSATIONS CONCERNING PLAINTIFF'S IDENTITY AND ALLEGED "ALIASES"

82. The Article characterizes Plaintiff as using a "fake name" and prominently accuses him of "Using Multiple Aliases."

83. Defendant Bello represents, in substance, that his own investigation revealed that Plaintiff had used nine different names or identities.

84. The Article presents these alleged name variations as purported evidence supporting its broader portrayal of Plaintiff as dishonest and deceptive.

85. Plaintiff alleges that the factual assertion and implication that he maintained nine separate false identities or used names or aliases for fraudulent or deceptive purposes is false.

86. Plaintiff's legal name is lengthy, and shortened forms and variations of that same name have appeared in professional, governmental, business, and other records depending upon available space, context, and the manner in which Plaintiff signed or identified himself.

87. "Karl Von Batten," "Karl-Marx Okeke-Von Batten," "Karl Okeke," and other relevant shortened forms are not separate or fabricated identities, but shortened or practical forms derived from Plaintiff's legal name, Karl-Marx Edward Ikemefune William George Okeke-Von Batten.

88. Plaintiff alleges that he has never maintained nine separate fraudulent identities and has not adopted or used shortened forms of his name for the purpose of fraudulently fabricating his education, professional qualifications, government relationships, military history, or other aspects of his background.

89. Plaintiff possesses official identity records, professional records, government filings, and other documentation establishing his identity and demonstrating the relationship between the relevant forms of his name.

90. Plaintiff does not reproduce sensitive identity documentation or unnecessary personal identifying information in this public Complaint and intends to present appropriate supporting records to the Court subject to whatever protections the Court determines are warranted.

91. Plaintiff alleges that Defendants transformed ordinary shortened and variant usages of a single lengthy legal name into purported evidence of multiple fraudulent identities.

92. Plaintiff will seek discovery concerning the origin of the names attributed to him, the records and databases Bello searched, the methods used to associate those names with Plaintiff, and the factual basis upon which Defendants characterized shortened forms of Plaintiff's name as separate deceptive identities.

H. FALSE ATTRIBUTION CONCERNING THE BIDEN WHITE HOUSE

93. The Article attributes to Plaintiff a claim that he served in the Biden White House.

94. Plaintiff alleges that he has never represented that he served in the Biden White House.

95. Plaintiff alleges that Defendants therefore attributed a factual representation to Plaintiff that Plaintiff never made and then used that purported representation as additional support for the Article's broader attack upon Plaintiff's honesty and credibility.

96. Plaintiff will seek discovery identifying the precise statement, publication, document, recording, webpage, source, or other material upon which Defendants relied in asserting that Plaintiff claimed to have served in the Biden White House.

I. PLAINTIFF'S RESEARCH AND AUTHORSHIP

97. The Article further questions or casts doubt upon the legitimacy and authorship of academic research publicly attributed to Plaintiff.

98. Plaintiff alleges that the academic articles and research works published under his name and challenged by Defendants were authored by Plaintiff.

99. Plaintiff possesses records concerning his research and authorship and alleges that publicly available academic and research platforms identify Plaintiff as the author of works published under his name.

100. To the extent Defendants intended to communicate as a factual assertion that Plaintiff falsely claimed authorship of research actually authored by other persons, Plaintiff alleges that such an assertion is false.

101. Plaintiff does not seek liability merely for speculation, questions, or protected expressions of opinion concerning the quality or significance of his academic work.

J. BELLO'S PURPORTED INVESTIGATION AND KNOWLEDGE OF FALSITY

102. Defendant Bello repeatedly represents that material accusations concerning Plaintiff resulted from his own investigation.

103. Plaintiff alleges that Bello's invocation of his investigation was intended to cause readers to believe that Bello had personally investigated and verified the factual accusations published in the Article.

104. Plaintiff does not allege merely that Bello conducted an inadequate investigation, misunderstood ambiguous records, relied negligently upon inaccurate information, or committed innocent journalistic errors.

105. Plaintiff alleges that Bello knew the central factual accusations challenged herein were false and nevertheless intentionally published them.

106. Plaintiff alleges that the Article was an intentional hit piece designed to discredit Plaintiff rather than the product of innocent factual mistakes.

107. Bello's representation that he conducted his own investigation places directly at issue the information he actually obtained, reviewed, credited, rejected, disregarded, or knew before publication.

108. Plaintiff will seek discovery concerning Bello's sources, notes, emails, text messages, direct messages, drafts, research files, database searches, editorial communications, fact-checking materials, and other records concerning Plaintiff and the preparation of the Article.

109.Plaintiff will further seek discovery concerning whether Defendants possessed, received, reviewed, or became aware of documentary or other information contradicting the accusations ultimately published.

110.Plaintiff alleges that such evidence will establish that the challenged falsehoods were not accidental inaccuracies but were knowingly published or published while Defendants subjectively entertained serious doubts regarding their truth.

K. PURPOSE AND TIMING OF THE PUBLICATION

111.At the time the Article was published, Plaintiff was publicly engaged in Washington-based advocacy concerning the release of FBI and DEA records relating to allegations of drug trafficking involving Nigerian President Bola Tinubu.

112.Plaintiff's advocacy involved communications and activities directed toward Congress, congressional staff, Executive Branch officials, federal agencies, journalists, policymakers, and other persons within the Washington governmental and foreign-policy community.

113.Plaintiff alleges that Defendants knew of Plaintiff's public advocacy and knew that his effectiveness in that work depended substantially upon his personal and professional credibility.

114.Plaintiff alleges that the timing, content, context, and dissemination of the Article support the inference that a substantial purpose and intended effect of the publication was to discredit Plaintiff and interfere with his ability to continue that Washington-based advocacy effectively.

115.Plaintiff alleges that accusations portraying him as dishonest about his identity, education, academic credentials, September 11 history, presidential appointment, professional history, and government service directly attack the credibility necessary for him to conduct lobbying, advocacy, government-relations, consulting, and related professional activities.

116.Plaintiff will seek discovery concerning Defendants' communications with third parties concerning Plaintiff, his lobbying and advocacy activities, the FBI and DEA records, Nigerian President Bola Tinubu, the Government of Nigeria, the Nigerian Presidency, and the preparation, purpose, timing, publication, and promotion of the Article.

117.Plaintiff will further seek discovery concerning whether persons connected to the Government of Nigeria, the Nigerian Presidency, Nigerian political organizations, or persons acting on their behalf communicated with Defendants concerning Plaintiff or the Article.

118.Plaintiff does not presently allege as an established fact that such communications occurred. Plaintiff alleges that discovery is appropriate because evidence concerning such

communications, if they exist, would principally be within the possession, custody, or control of Defendants or third parties.

L. SOCIAL-MEDIA DISSEMINATION

119. SaharaReporters did not limit publication of the Article to its website.

120. SaharaReporters affirmatively promoted and distributed the Article through its official account on X.

121. Plaintiff alleges that this additional publication increased the circulation, accessibility, and potential audience for the challenged accusations.

122. Plaintiff will seek discovery concerning the Article's social-media dissemination, including impressions, views, reposts, geographic distribution, direct transmissions, paid or targeted promotion, and other available analytics.

123. Plaintiff will further seek discovery concerning whether Defendants affirmatively transmitted, promoted, tagged, or otherwise directed the Article to persons, officials, journalists, organizations, or institutions within Washington, D.C.

M. ACTUAL MALICE

124. Plaintiff alleges that Defendants published the challenged material factual accusations with actual malice to the extent that constitutional standard applies.

125. Plaintiff alleges that Defendants knew that the central factual accusations challenged herein were false or published them while subjectively entertaining serious doubts regarding their truth.

126. Plaintiff's actual-malice allegations are not based merely upon an alleged failure to conduct a reasonable investigation.

127. Plaintiff alleges that Bello affirmatively represented that he conducted his own investigation and therefore acquired, reviewed, selected, credited, rejected, or disregarded information concerning the factual accusations ultimately published.

128. Plaintiff alleges that discovery concerning the information actually possessed by Defendants before publication will establish their knowledge of falsity or serious subjective doubts concerning the accuracy of the challenged accusations.

129. Plaintiff will seek discovery concerning Defendants' sources, communications, research, notes, drafts, editorial discussions, fact-checking materials, contrary information, source credibility assessments, and other evidence bearing upon their state of mind.

130. Plaintiff alleges that the evidence will demonstrate that Defendants' publication of the challenged accusations was intentional and malicious rather than the result of innocent mistake, misunderstanding, or ordinary journalistic error.

N. REPUTATIONAL AND PROFESSIONAL HARM

131. Plaintiff's lobbying, government-relations, advocacy, consulting, and other professional activities depend substantially upon honesty, credibility, trust, qualifications, and professional relationships.

132. The challenged accusations attack those characteristics by portraying Plaintiff as dishonest concerning his identity, education, academic credentials, professional history, September 11 connection, presidential appointment, and government service.

133. Plaintiff alleges that the Article has caused injury to his personal and professional reputation, including particularized injury within the Washington governmental, political, lobbying, advocacy, media, and foreign-policy communities in which he works.

134. Plaintiff further alleges economic and professional injury resulting from damage to his reputation, business relationships, professional opportunities, business goodwill, and ability to conduct his professional activities.

135. Plaintiff alleges that publication through SaharaReporters' website and subsequent dissemination through social media increased the scope, accessibility, and duration of the resulting harm.

136. Plaintiff will establish the nature and amount of his damages through documentary evidence, business and financial records, testimony, discovery, expert evidence where appropriate, and other admissible evidence.

## VII. CAUSES OF ACTION

**COUNT I**
DEFAMATION / LIBEL PER SE
Against All Defendants

137. Plaintiff incorporates by reference paragraphs 1 through 136 as though fully set forth herein.

138. Defendants published statements concerning Plaintiff to third parties through SaharaReporters' website, official social-media channels, and other means of publication and distribution.

139. The challenged statements concern Plaintiff and include factual assertions regarding his identity, educational history, academic credentials and affiliations, professional history,

connection to September 11 and the World Trade Center, presidential appointment, government service, and other aspects of his personal and professional background.

140.Plaintiff alleges that the material factual accusations challenged in this Complaint are false and objectively capable of being proven true or false.

141.Plaintiff does not seek liability merely for insults, political disagreement, rhetorical hyperbole, unfavorable commentary, questions, speculation, or protected expressions of subjective opinion. Plaintiff challenges false assertions of fact and defamatory factual implications presented as having an underlying factual basis.

142.The challenged statements accuse Plaintiff, expressly and by implication, of dishonesty, fabrication, deception, and fraudulent professional conduct.

143.Plaintiff alleges that the challenged statements constitute defamation per se because they directly prejudice Plaintiff in his profession, trade, and business by attacking his honesty, qualifications, credibility, professional integrity, and fitness to conduct the professional activities through which he earns his livelihood.

144.Defendant Bello authored the Article and caused the challenged statements to be published.

145.Defendant Sahara Reporters Media Group, Inc. published the Article and subsequently promoted and distributed it through its official social-media channels.

146.Plaintiff alleges that Defendants acted with the degree of fault required by applicable law and, to the extent constitutionally required, with actual malice.

147.Plaintiff specifically alleges that Defendants knew that the central factual accusations challenged herein were false or published them while subjectively entertaining serious doubts regarding their truth.

148.Plaintiff alleges that Bello's repeated representation that his accusations resulted from his own investigation makes the information actually obtained, reviewed, credited, rejected, disregarded, or known during that investigation directly relevant to Defendants' knowledge and state of mind.

149.Plaintiff alleges that the challenged statements were published without privilege or authorization sufficient to defeat Plaintiff's claims.

150.As a direct and proximate result of Defendants' publication and dissemination of the challenged statements, Plaintiff has suffered reputational, professional, economic, and other legally compensable injury.

151.Plaintiff seeks compensatory damages and, upon the required evidentiary showing, punitive damages.

**COUNT II**
DEFAMATION BY IMPLICATION
Against All Defendants

152. Plaintiff incorporates by reference paragraphs 1 through 151 as though fully set forth herein.

153. In addition to the individual factual accusations identified above, Defendants selected, arranged, juxtaposed, and repeated purported facts concerning Plaintiff in a manner that communicated an overarching defamatory factual implication.

154. The Article communicates, expressly and by implication, that Plaintiff is a serial fabricator who constructed a false professional persona through fabricated names, educational credentials, academic affiliations, professional history, September 11 claims, government service, and presidential credentials.

155. Plaintiff alleges that this overarching factual implication is false.

156. Plaintiff does not challenge merely the Article's hostile tone or subjective criticism. Plaintiff challenges the false factual implication created through Defendants' presentation and combination of purported facts.

157. The Article's accusation that Plaintiff used "multiple aliases" was presented together with accusations concerning allegedly fabricated education, academic credentials, professional history, September 11 claims, government service, and presidential appointment, reinforcing the portrayal of Plaintiff as engaged in systematic deception.

158. The Article's use of terms including "grifter" and "con artist," when presented in the context of those factual accusations, further reinforced the implication that Plaintiff's identity, credentials, personal history, and professional background were fraudulently constructed.

159. Plaintiff alleges that Defendants intended, endorsed, or affirmatively conveyed this defamatory factual implication.

160. To the extent actual malice is constitutionally required, Plaintiff alleges that Defendants conveyed the challenged implication knowing it was false or while subjectively entertaining serious doubts regarding its truth.

161. As a direct and proximate result of Defendants' publication and dissemination of the defamatory factual implication, Plaintiff has suffered reputational, professional, economic, and other legally compensable injury.

162. Plaintiff seeks compensatory damages and, upon the required evidentiary showing, punitive damages.

## VIII. DAMAGES

163. Plaintiff has developed substantial professional relationships, business goodwill, and a professional reputation within Washington, D.C., and elsewhere.

164. Plaintiff's professional activities require credibility, honesty, trust, and confidence among clients, government officials, policymakers, professional contacts, journalists, and others.

165. Defendants' challenged accusations strike directly at Plaintiff's honesty, integrity, qualifications, identity, education, professional background, personal history, and governmental credibility.

166. Plaintiff alleges that Defendants' publication and dissemination of the challenged accusations caused substantial injury to his personal and professional reputation.

167. Plaintiff alleges particularized injury to his professional standing, business relationships, business goodwill, professional opportunities, and professional activities within Washington, D.C.

168. Plaintiff further alleges actual and prospective economic injury resulting from damage to his professional reputation, interference with professional opportunities, and impairment of his ability to conduct lobbying, government-relations, advocacy, consulting, and related professional activities.

169. Plaintiff alleges that SaharaReporters' dissemination of the Article through its website and official social-media channels increased the reach and resulting harm of the challenged accusations.

170. Plaintiff alleges that the continued online availability and circulation of the Article creates an ongoing risk of additional reputational, professional, and economic injury.

171. Plaintiff will establish the nature and amount of his damages through documentary evidence, business and financial records, testimony, discovery, expert evidence where appropriate, and other admissible evidence.

172. Plaintiff seeks all compensatory damages legally available under applicable law.

173. Plaintiff seeks punitive damages upon proof that Defendants acted with the state of mind required for such an award.

174. Plaintiff presently demands total damages in the amount of $26,000,000, consisting of compensatory and punitive damages in amounts to be determined by the Court based upon the evidence and applicable law.

## IX. PROTECTED PRESENTATION OF SENSITIVE EVIDENCE

175. Plaintiff possesses primary documentary evidence that he alleges directly refutes material factual accusations challenged in this action.

176. Such evidence includes diplomas, academic records and institutional confirmations from educational institutions identified in the Article; documentation concerning Plaintiff's Columbia University degree; documentation establishing Plaintiff's Doctor of Health Administration from A.T. Still University of Health Sciences; Royal Society for Public Health records establishing Plaintiff's Fellow status; presidential appointment documentation; employment and professional records concerning Plaintiff's connection to the World Trade Center in 2001; securities-industry registration records; identity and government records; business records; research and authorship records; and other primary documentary evidence.

177. Certain supporting records contain private educational, employment, financial, professional, account, or identifying information that Plaintiff does not believe should be unnecessarily placed on the public docket.

178. Plaintiff therefore does not attach those sensitive records to this publicly filed Complaint.

179. At the appropriate procedural stage, and in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court, Plaintiff intends to seek leave where required to submit appropriate sensitive evidence under seal, subject to an appropriate protective order, and/or for in camera review by the Court.

180. Plaintiff does not seek through this Complaint to predetermine the Court's treatment of such evidence and will comply with whatever procedures and protections the Court determines are appropriate.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Karl Von Batten respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants on the claims established by the evidence;

B. Award Plaintiff compensatory damages for reputational, professional, economic, and other legally compensable injuries;

C. Award Plaintiff punitive damages to the extent permitted by applicable law;

D. Award Plaintiff total damages presently demanded in the amount of $26,000,000, or such other amount as the Court determines is supported by the evidence and permitted by law;

E. Award Plaintiff pre-judgment and post-judgment interest to the extent permitted by law;

F. Award Plaintiff taxable costs and any other costs recoverable under applicable law;

G. If the Court determines that personal jurisdiction over one or both Defendants is lacking, or that venue is improper in this District, transfer this action, rather than dismiss it, to an appropriate United States District Court in the State of New York pursuant to 28 U.S.C. §§ 1406(a) and/or 1631, if the Court determines that such transfer is authorized and in the interest of justice; and

H. Grant such other and further relief as the Court deems just and proper.

Dated: September 15, 2026

Respectfully submitted,

DR. KARL VON BATTEN
Plaintiff, Pro Se
1300 Pennsylvania Avenue NW, Suite 701
Washington, DC 20004
202-341-2014
karl.vonbatten@montagueyork.com